UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHOREWOOD FOREST UTILITIES INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO. 2:19-CV-241-PPS-JEM ) |
| McMAHON ASSOCIATES INC., McMAHON INC., and MIDWEST CONTRACT OPERATIONS, INC., | ) ) ) ) ) |
| Defendants. | ) |

# OPINION AND ORDER

This is the second round of motions to dismiss in this case. Plaintiff, Shorewood Forest Utilities Inc. ("SFU") is an Indiana not-for-profit corporation that provides sewage services in Valparaiso to the subdivision of Shorewood Forest. It has sued three defendants who furnished engineering and consultation services regarding replacing aeration basins or tanks in the plant — McMahon Associates, Inc., McMahon, Inc., and Midwest Contract Operations, Inc. ("MCO"). The gist of the beef here is that the Defendants allegedly doled out advice (which supposedly turned out to be incorrect) as to whether SFU could expand and have the capacity to have new homes use its waste water treatment plant ("WWTP").

There are presently two motions to dismiss before me: (1) MCO's motion to dismiss Counts III (professional negligence) and VII (negligent misstatement) of the second amended complaint for failure to state a claim [DE 76]; and (2) McMahon Associates, Inc. and McMahon, Inc.'s motion to dismiss the second amended complaint

pursuant to Rule 12(b)(6) and Rule 9(b). [DE 82.] Because I find that the claims against MCO lack any supporting factual allegations, MCO's motion to dismiss will be granted. However, SFU does properly allege claims against McMahon with the requisite degree of specificity, so that motion to dismiss will be denied.

## Background

The beginning of the procedural background for this case is set forth in my order and opinion dated July 2, 2020, which granted MCO's motion for a more definite statement. [DE 69.] I ordered SFU to more specifically define its claims and allegations against each defendant, naming each relevant party for each allegation, and urged SFU "to take to heart McMahon's arguments in its motion that it has failed to meet the minimum pleading requirements . . . imposed by Rule 9(b)." [*Id.* at 8.] Thereafter, SFU filed a second amended complaint which sets forth the following causes of action: breach of contract by McMahon (Count I); negligence as to McMahon (Count II); negligence as to MCO (Count III); fraudulent misrepresentation by McMahon (Count IV); breach of fiduciary duty by McMahon (Count V); deception by McMahon (Count VI); and negligent misstatement as to McMahon and MCO (Count VII). [Sec. Am. Compl., DE 75.]

Pursuant to Rule 12(b)(6), MCO has moved to dismiss the professional negligence count claiming there is an insufficient factual basis. MCO also moves to dismiss the negligent misstatement count, arguing that contractual privity exists and precludes such a claim. Because this is already SFU's third bite at the apple, MCO asks

2

that Counts III and VII be dismissed without the ability to re-plead.

For its part, McMahon has moved to dismiss the second amended complaint for failure to state a claim under Rule 12(b)(6) and in conjunction with Rule 9(b) for failure to plead fraud with specificity. McMahon argues that SFU's "entire Complaint is predicated upon fraud, and as such, must comply with both Rule 8 and 9." [DE 83 at 5.] Ultimately, it complains that the second amended complaint fails in its entirety because it does not have "concise specificity." [*Id.*]

SFU has responded in opposition to each motion separately, not surprisingly contending that the second amended complaint sufficiently sets forth these claims. I will address each motion one by one.

**Discussion**

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. SFU must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal*, 556 U.S. at 679. Finally, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the sufficiency of the complaint, not the merits of the case.'" *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. However, fraud and constructive fraud claims are subject to the heightened Rule 9(b) pleading standards. *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-cv-00205-LJM-WGH, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011) (it is "undisputed that the constructive and actual fraud claims are subject to heightened Rule 9(b) pleading standards."). The heightened 9(b) pleading for fraud, "ordinarily requir[ing] describing the who, what, when, where, and how of the fraud," *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011), has the purpose of "forc[ing] the plaintiff to do more than the usual investigation before filing [its] complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

I.  **MCO's Motion to Dismiss Counts III and VII of the Second Amended Complaint**

Count III is a claim for negligence against MCO. MCO argues this claim should be dismissed because there are no facts that provide any plausible basis for a claim of negligence against it. [DE 77 at 5.] For starters, it is worth pointing out that the relationship between the defendants is a bit obscure. The second amended complaint

4

tells me that MCO is a "separate legal entity" from the McMahon defendants but they are nonetheless somehow "associated." [Sec. Am. Compl. ¶ 7.] I'm not exactly sure what that means. But in any event, MCO's role in this case seems very limited. Indeed, the second amended complaint says only that MCO was hired to do "discreet" tasks at SFU [*Id.* ¶ 23], and it appears those task were limited to doing "laboratory testing of influent" at SFU. [*Id.* ¶ 12.]

Under Indiana law, a plaintiff asserting a claim for negligence must prove the existence of three elements: "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *King v. Northeast Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). Additionally, to survive the 12(b)(6) motion, SFU must plead enough facts to make it plausible it was harmed as a proximate result of MCO's breach of a duty it owed to SFU. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). We have to keep in mind that even post-*Twombly* and *Iqbal*, the federal pleading standard only requires that a plaintiff provide "enough detail [in a complaint] to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quotation omitted). Yet the allegations require "more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal

quotation marks omitted).

Has SFU pleaded enough facts to show it is plausible that MCO breached its duty to SFU and that breach proximately caused its injuries? Let's look at the second amended complaint. Regarding the "duty" element of negligence, Plaintiff alleges MCO is composed of engineers and wastewater operational and microbiology specialists, who "had a duty to practice within the applicable standard of care for similarly situated professionals working in the state of Indiana." [Sec. Am. Compl. ¶ 110.] It goes on to allege that "[b]ecause of their professional background, licensing responsibilities, and representations that MCO knew and understood Indiana law, administrative codes and guidance of a similarly situated professional engineering company so engaged with 'hands on' technology, MCO owed a legal duty of care to SFU and the Utility Owners." [*Id.*] With all due respect, this is heavy on rhetoric and skimpy on facts and details. I am left to wonder: what is MCO's professional background? How is it licensed? What are the supposed responsibilities that accompany its license? What kind of codes are applicable to MCO's profession and work? What Indiana law is applicable? What codes are pertinent, and what does it mean to engage with "hands on" technology?

There is another paragraph that deals with MCO's "duty," but unfortunately, it does not elucidate the issue either. SFU alleges that:

> MCO had a duty to perform all of its work and the engagement
> with and for SFU in a professional and workmanlike manner, using
> all readily available information, as well as performing reasonable
> engineering calculations to help SFU make informed decisions,

>conclusions and recommendations that were compliant with both federal and state law, rules and regulations.  **See Exhibit 10**.  This included providing timely information to its sister companies, McMahon Associates Inc. and McMahon, Inc. who were engineers of record for SFU and making public presentations of out-of-date information on the SFU WWTP's capacity to take on new influent.

[Sec. Am. Compl. ¶ 113 (emphasis in original).]  Again, this is very vague.  What federal and state law, rules, and regulations were MCO supposed to abide by?  In other words, what exact duty did it owe to SFU?

With regard to the allegations of "breach," the second amended complaint is equally unclear and vague.  SFU alleges that "MCO breached its duties and performed its work and tasks on the engagement, which in part deal with SFU's WWTP plant capacity, in a negligent and unprofessional manner while at the same time violating applicable engineering and/or wastewater professional's ethical duties and standards, and otherwise breached the standard of care owed to SFU." [*Id.* ¶ 114.] We know from paragraph 12 of the second amended complaint that MCO was hired to do laboratory testing of influent to comply with some requirement of IDEM.  [*Id.* ¶ 12.]  But what exact duties and standards did MCO not uphold?  As it stands, the second amended complaint is just full of legal conclusions.  The best example of the conclusory nature of the complaint is where SFU alleges: "[a]s a result of the several acts of negligence by MCO, SFU has been damaged."  [*Id.* ¶ 116.]  This count fails to contain any factual allegations as to what the "several acts of negligence" consisted of.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *See Iqbal*, 556 U.S. at 678.

Other than the reference that MCO was hired to do the "discreet" task of lab testing [Sec. Am. Compl. ¶¶ 12, 23], the only passable reference to a fact in the complaint is a reference to Exhibit 10, which is a letter sent from MCO's president regarding the "termination of services" on November 30, 2016. [DE 75-1 at 41.] In the letter, MCO states "[s]ince we will no longer be making routine visits there are a few items which have been noted but not yet completed. I find it necessary to remind the board of these things so it will not cause compliance issues if left unaddressed in the future." [*Id.*] One of the things MCO reminds SFU is that "[p]ackage plant #1 and #2 are not operable in their current condition. This has reduced the rated capacity of the treatment plant." [*Id.*] This letter does not seem to help SFU's case against MCO. In fact, elsewhere in the complaint, Plaintiff alleges that McMahon "ignored the clarifications and admonitions given by [MCO in the November 30, 2016 report], or, alternatively, the information was provided but ignored by McMahon in public presentations made to SFU and Utility Owners in 2016 and 2017, and both McMahon and MCO knew that SFU and the Utility Owners would rely on their professional opinions." [Sec. Am. Compl. ¶ 12.]

The complaint itself establishes that MCO's engagement with SFU ended in November 2016. [Sec. Am. Compl., Ex. 10.] It is clear from the face of the complaint that it was after the MCO engagement period that McMahon personnel was alleged to have made live presentations and disseminated writings and handouts that allegedly included false assumptions and errors from December 2016-2017. [*Id.* ¶¶ 43-45, 52.] In

fact, SFU alleges that *McMahon* failed to meet the required standard of care because the presentations it made to the Old Board and to the Utility Members in the December 2016 and 2017 timeframe "failed to include the clarifications and admonitions made by MCO on November 30, 2016." [*Id.* ¶ 52.] Again, the complaint itself sets out the:

> clarifications and admonitions provided by MCO [in its November 30, 2016 letter] which set forth that: (a) the hydraulic conditions of aeration tank #3 were questionable due to piping configuration from aeration tank #4 to clarifier #3; (b) package plant #1 and #2 were not operable in current condition reducing the rated capacity of the SFU WWTP; (c) the clarifier hour meter was not operable; (d) two blower motors were not operational; (e) the east digester has 1/3 of the diffusers which do not operate properly; and (f) at the next phase of needed improvements to the WWTP that the valving needed to be corrected in the blower building.

[Sec. Am. Compl. ¶ 12.] The complaint is pretty darn specific about what MCO did *correctly* in warning SFU and McMahon about the conditions of the WWTP at the end of its contract. But it does not provide any factual allegations as to *what it did wrong*. In other words, there are no facts alleged in the complaint to support what specific duty MCO owed to SFU or how exactly it breached that duty.

I am cognizant that this is a motion to dismiss and I have considered SFU's insistent position that taken in the light most favorable to it, it has properly pled the elements of negligence. But that ignores the requirement discussed above and first announced by the Supreme Court over a decade ago, that a complaint must allege sufficient facts to show a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. Here, the second amended complaint lacks any factual allegations as to what MCO did or failed to do that is claimed to constitute negligent performance of any duty it owed to

9

SFU.  It doesn't establish what work MCO performed in a negligent manner, and it fails to allege what MCO said, did, or failed to do to breach whatever standard of care owed (which is also unclear).  Therefore, I find that SFU has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  MCO's motion to dismiss will be granted as to Count III, for professional negligence.

Let's move on to Count VII which alleges that MCO is liable for negligent misstatements.  [Sec. Am. Compl. at 48.]  SFU cites a case in the second amended complaint for the proposition that it has an actionable claim against MCO for negligent misstatement.  *See U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010).  In *U.S. Bank*, a title insurance company failed to discover a foreclosure judgment on real property and incorrectly issued a title commitment to a lender representing the property was clear.  The plaintiff bank eventually acquired the lender's interest in the real property, and was forced to defend against the holder of the foreclosure judgment.  The Indiana Supreme Court held the economic loss rule did not bar the bank's negligent misrepresentation claim against the title insurance company even though the bank's losses were purely economic.  *Id.* at 749-50.  The Seventh Circuit later recognized that "[t]wo considerations were critical to the [*U.S. Bank*] court's decision."  *JMB Mfg. Inc. v. Child Craft, LLC*, 799 F.3d 780, 786 (7th Cir. 2015).  The first was that "the plaintiff bank and the defendant title insurance company were *not* in contractual privity with one another."  *Id.* (emphasis in original).  Second, the court in *U.S. Bank* emphasized special

10

factors apply in the context of title insurance: "[t]itle searches are frequently required in situations involving transactions in which the state of the title must be known accurately or the customer will forseeably suffer harm that is both certain and direct." *Id.* (quoting *U.S. Bank*, 929 N.E.2d at 749.) Neither of these factors are present in this case.

First, this case obviously does not involve a dispute about title insurance. Second, MCO contends there is no lack of contractual privity in this case. Seemingly trying to fit this case into the narrow confines of *U.S. Bank*, SFU alleges that the "Old SFU Board Members did not have a direct contractual relationship with MCO . . . ." [Sec. Am. Compl. ¶ 183.] But this statement isn't really relevant because the only plaintiff in this case is SFU itself, and the second amended complaint actually describes the "Old Board" as "non-parties." [*Id.* ¶ 9.] In contrast to the situation in *U.S.Bank*, it appears that SFU does have contractual privity with MCO, because Plaintiff attached the Agreement for Professional Services to the second amended complaint as Exhibit 10. [DE 75-1 at 41.] SFU argues in its response brief that because the contractual relationship between SFU and MCO ended at some point, it could be characterized as lacking contractual privity at some juncture in time. [DE 79 at 13.] I'm not sure what I think about this argument.

Putting aside the discussion about the applicability of this one case cited in the second amended complaint, and looking at the issue more globally, Count VII suffers from the same shortcomings as Count III - there are insufficient supporting facts.

11

Paragraphs 184 and 185 of Count VII are almost identical to the conclusory allegations in paragraphs 113 and 114 of the negligence claim, with the exception that paragraph 185 adds that MCO "made negligent misstatements to SFU and to the Old SFU Board Members." [Sec. Am. Compl. ¶ 185.] What negligent misstatements?

SFU goes on to state that "[b]oth MCO and McMahon were providing professional advice to the old SFU Board Members as to the supposed excess capacity of the SFU plant, and the Defendants knew that the Old Board Members were relying on their professional opinions as to the supposed excess capacity of the SFU plant." [*Id.* ¶ 182.] OK, but did MCO actually make a negligent statement about the excess capacity of the plant? What did it say, and when? Again in this count, SFU cites to Exhibit 10, which is of course MCO's November 30, 2016 letter to SFU, which does not state anything about excess capacity, but rather provides "clarifications and admonitions" about the plant operations, including that the packaging plant #1 and #2 were not operable in the current condition which had the effect of "reducing the rated capacity of the SFU WWTP." [Sec. Am. Compl. ¶ 12; Ex. 10.]

SFU is alleging that MCO provided some kind of inaccurate information about the plant. But it fails to include any essential facts supporting what MCO said. And in response, SFU claims that "MCO knows what statements it made, both verbally and in writing, and those are also set out in part in the Second Amended Complaint and attachments, [so] MCO is on notice of the inaccurate statements forming the basis of Shorewood's claim." [DE 79 at 12.] This is not enough to flip the burden and tell MCO,

12

"you know what you said, so you must be on notice."

The second amended complaint does not show any connection between MCO and the claim for negligent misstatement. SFU complains about inaccurate information in a 2014 Capacity Report, but that was not authored by MCO. [Sec. Am. Compl. ¶¶ 65-66.] SFU also alleges outdated information was presented by McMahon in December 2016 and the Spring of 2017, but that was after MCO's contract ended. [*Id.* ¶ 69.] Without any factual allegations in the second amended complaint about what allegedly inaccurate information MCO provided about the capacity of the WWTP, the court is left with all the questions set forth in this order and it cannot be said that MCO is on proper notice of the claims against it. As such, Count VII will also be dismissed.

MCO asks that Counts III and VII be dismissed with prejudice. SFU has already filed two amended complaints, and there is no indication that it could successfully amend the complaint to cure the defects identified above. Considering the procedural posture of this case, especially given the fact that SFU was allowed to replead after having the benefit of my guidance in the first opinion, it is appropriate to dismiss SFU's claims against MCO with prejudice. *See, e.g., Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322-32 (7th Cir. 1998) (affirming dismissal of second amended complaint and recognizing that the "district judge was not required to give her another chance.").

**II.  Defendants' McMahon Associates, Inc. and McMahon, Inc.'s Motion to Dismiss the Second Amended Complaint**

McMahon contends the entire second amended complaint is predicated upon fraud, thus it must comply with both Rule 8 and Rule 9. McMahon claims the

13

requirements of "concise specificity" are not met, and therefor the entire second amended complaint should be dismissed. [DE 83 at 5.] McMahon seems to want the best of both worlds – short and plain allegations that comport with Rule 8, but also detailed and specific allegations to support the heightened pleadings standard for fraud under Rule 9(b). The causes of action against McMahon are: breach of contract (Count I); negligence (Count II); fraudulent misrepresentation (Count IV); breach of fiduciary duty (Count V); deception (Count VI); and negligent misstatement (Count VII). [DE 75.] McMahon's broad argument that "Plaintiff does not seem to understand how to succinctly plead with particularity" is simply insufficient to dismiss all the claims against it. [DE 83 at 4.]

McMahon does not address any count in particular in its all-embracing motion. Instead, its abbreviated motion merely asserts the entire second amended complaint is deficient. As I typically do with a motion to dismiss, I will look at the sufficiency of each count alleged against McMahon. Let's first look at the breach of contract claim in Count I. Rule 9(b)'s heightened pleading requirement does not apply to this count despite McMahon's claim that the whole amended complaint "sounds in fraud." It does not. Instead, Count I is a breach of contract claim and it easily survives a motion to dismiss.

It's is worth pointing out at the outset, the stark difference between the skimpy allegations against MCO (addressed above) and the robust allegations against McMahon. All of the particulars that were missing from the allegations directed at

MCO are present in spades in the claims against McMahon. For example, the breach of contract allegations against McMahon span ten pages and contain allegations like McMahon agreed to undertake the responsibilities of a professional engineering company and do all necessary studies and calculations to make recommendations that would help maintain proper functioning and legal compliance of SFU's WWTP with its NPDES permit and all other applicable law; McMahon billed SFU a second time for work which was already performed by another engineer of record (NIES Engineering); people from McMahon (including Timothy Bronn, Donald Voogt, Anthony Kappell, and Douglas Homeier) conducted a study and authored the 2014 plant capacity report which "intentionally and wrongfully used hydraulic retention time ("HRT") and not organic loading calculations for determining plant capacity for the WWTP"; McMahon failed to use actual current operational data when making public presentations about the plant capacity, and by failing to update the 2014 Capacity Report in at least two special meetings held on December 15, 2016 and June 8, 2017; and McMahon failed to account for the need and cost of a larger-capacity sewer force main and lift stations that would run from Arbor Lakes South to the WWTP. [Sec. Am. Compl. ¶¶ 62, 64-66, 71, 76.] The thorough allegations about how McMahon breached its contract with SFU go on for pages and pages and clearly meet the pleading requirement.

Count II, for negligence, incorporates all of the previous detailed paragraphs, and also satisfies the requisite pleading requirements. McMahon provides no case law that a negligence claim should be evaluated under Rule 9, and it makes sense that a

negligence claim should be looked at under the plain and simple pleading requirements of Rule 8. These are satisfied here, where SFU alleges McMahon claimed to have known and understood Indiana law and administrative codes, and they owed it a duty of care to practice within the standard of care for engineers and design professionals in Indiana. [Sec. Am. Compl. ¶¶ 99-100.] It also alleges that McMahon failed to exercise ordinary care, failed to perform reasonable engineering calculations to help SFU make informed decisions, and consequently damaged SFU. [*Id.* ¶¶ 101-06.] SFU has sufficiently pleaded a claim of negligence against McMahon.

The next count against McMahon is Count IV, for fraudulent misrepresentation. Fraudulent misrepresentation claims are subject to the heightened pleading standards of Rule 9(b). *Petrakopoulou v. DHR Int'l, Inc.*, 660 F.Supp.2d 935, 937 (N.D. Ill. 2009) (collecting cases). Pursuant to Rule 9(b), a party "must state with particularity the circumstances constituting fraud or mistake." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). Generally, that means that the complaint must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharm., Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (quotation omitted).

This heightened standard is satisfied here. SFU alleges that from 2010-2017, McMahon essentially adopted the work product done by a previous engineering firm regarding whether Tanks 1 and 2 needed to be replaced, but then fraudulently billed

16

$366,000 for this work, pretending McMahon had done this work for the first time. [Sec. Am. Compl. ¶ 126.] SFU alleges that McMahon, through John Sturgill and its billing department, intentionally made misleading statements regarding their engineering bills and failed to note that the work was previously performed by another firm. [*Id.* ¶ 129.] The second amended complaint also contains very detailed allegations about the misrepresentations Anthony Kappell (the principal author of the Capacity Report) and McMahon made in the Capacity Report, and then repeated that information years later without updating it. [*Id.* ¶¶ 130-33.] SFU asserts that McMahon knew or should have known these statements and misrepresentations, including calculating the plant capacity of the WWTP and double-billing for engineering and design services, were false when made to SFU, and it caused SFU damage. [*Id.* ¶¶ 141-42.] This fraudulent misrepresentation claim contains explicit allegations, and survives dismissal.

Count V is breach of fiduciary duty by McMahon. McMahon has not argued anything specific about this count, other than their general contention that the second amended complaint is both not specific and not concise at the same time. Like the other counts against McMahon, SFU has spelled out the requirements of a claim for breach of fiduciary duty: the existence of a fiduciary relationship, a breach of the duty owed by the fiduciary to the beneficiary, and harm to the beneficiary. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). Therefore, dismissal is not warranted as to this claim.

Count VI states a claim for deception under the Indiana Crime Victims Act, I.C. §

17

35-43-5-3.  The second amended complaint sets forth extremely detailed allegations regarding McMahon's double billing and intentionally providing fraudulent material misrepresentations about the plant capacity. [Sec. Am. Compl. ¶¶ 167-172.]  As with the previous count, this one is not even mentioned in McMahon's motion to dismiss.  Therefore, the count survives.

Finally, Count VII is the claim for negligent misstatement, which is also made against McMahon.  Unlike MCO in its motion to dismiss, McMahon's cursory motion does not discuss the viability of this claim in light of the *U.S. Bank* case, or otherwise address the allegations in this count.  Considering the previously incorporated paragraphs and the allegations in this count, I can't say that it should be dismissed against McMahon at this time.

## Conclusion

For the aforementioned reasons, Midwest Contract Operations, Inc.'s Motion to Dismiss Counts III and VII of the second amended complaint [DE 76] is GRANTED and those claims are DISMISSED WITH PREJUDICE as to Defendant Midwest Contract Operations, Inc.  Because these are the only two claims stated against Defendant Midwest Contract Operations, Inc., it will be termed from this case.  Defendants' McMahon Associates, Inc., and McMahon, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Trial Rule 12(b)(6) as Applied in Accordance with (9)(b) [DE 82] is DENIED.

SO ORDERED.

ENTERED: November 18, 2020.

                                                 /s/ Philip P. Simon
                                                 PHILIP P. SIMON, JUDGE
                                                 UNITED STATES DISTRICT COURT